UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TYSON ROBINSON,<br><br>        Petitioner<br><br>    v.<br><br>MARTIN L. FRINK, Warden,[1]<br><br>        Respondent. | Case No: C 11-01903 SBA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

The parties are presently before the Court on Petitioner Tyson Robinson's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2007 burglary conviction in the Marin County Superior Court. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the petition for the reasons set forth below.

I.  **BACKGROUND**

    A.  **STATEMENT OF FACTS**

The following facts are taken from the opinion of the California Court of Appeal:

> Gabriel Haskell lived on a houseboat in the Gate 6 Co-op (Gate 6) in Sausalito, a poorly maintained dock area with make-shift dwellings. The dock is unsteady, with trash, debris and raw sewage in the water, and it is an area unlikely to be frequented by persons not living there. Haskell is a musician and operated a recording studio in his houseboat. He had about $10,000 of recording equipment inside.
>
> At about 10:00 p.m. on March 14, 2007, Haskell was home watching television and heard a creaking noise outside. He looked at a surveillance camera he had installed and saw two men approach the front door of his houseboat. Suddenly the door was kicked in and splintered open. The force used broke the deadbolt and one of the hinges and damaged the

---

[1] Martin L. Frink, the current warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

doorknob.

Haskell reacted by running and tackling a man who was in his doorway. The foam platform in front of his door cracked and they fell down, partially in the water. As they were struggling, another man approached with a gun pointed at Haskell and told him, "Don't die." The man was wearing a hooded jacket and had a bandana over the lower part of his face.

After hearing the threat, Haskell dove in the water (which was not very deep) and "halfway sw[a]m" to the dock five feet away. He ran down the dock, hearing an "explosion" behind him. The sky lit up like there had been a blast. Haskell continued to run until he had reached the parking lot of the Issaquah dock, which was the next dock over from the Gate 6. He saw some people in the parking lot, who called the police when he told them someone had shot at him. They noticed a person in the water swim under the Issequah dock, get out of the water and run away.

Mercedes Koestel lived on one of the other houseboats on the Gate 6. She heard a gunshot and looked out her window to see three silhouettes in front of Haskell's houseboat. The first person was running, the second one struggled on the dock before running after the first person and the third one jumped onto a float before realizing there was nowhere to go and ran off the float into the water. Koestel thought the first person was Haskell. The third person appeared to be wearing a sweatshirt with a hood covering most of his face.

Thomas Rogers and Alissandre Haas lived next door to Haskell at Gate 6 and also heard the gunshot. Rogers was in the bathroom, but Haas ran immediately outside and saw appellant running down the dock wearing a ski mask. Haas put up her arms and pushed appellant as hard as she could. Jarrard Walter, another resident of Gate 6, walked out of his houseboat and helped Haas push appellant. Walter and appellant struggled and fell into the water. Rogers came out of the house and struggled with appellant as he climbed out of the water, keeping him in place until the police arrived.

Marin County Sheriff's Deputy Boden arrived on the scene and found Rogers and appellant intertwined on the dock. He placed appellant under arrest and searched him, finding no weapons. A ski mask was found in the water along with a black hooded jacket.

Deputy Yazzolino contacted Haskell, who was soaking wet and very nervous. He searched Haskell for weapons but found nothing. A search of Haskell's houseboat uncovered some remnants of marijuana in the freezer section of the refrigerator. When Haskell returned to his houseboat, he discovered it had been ransacked and that some electronics equipment and computers had been destroyed.

> Both appellant and Haskell were tested for gunshot residue. Residue was found on Haskell's hands, but not on appellant's. Haskell could have received the residue from firing a weapon, from having his hands in the vicinity when a weapon was fired, or from an environmental source. The negative finding on appellant's hands was inconclusive because firing a weapon does not always leave residue on a person's hands and because activities such as putting hands in one's pockets, washing one's hands and falling in the water can all remove residue.
>
> The next day, a search of the area during low tide revealed footprints in the mud between the Gate 6 and Issaquah docks as well as muddy footprints along a route matching that taken by the second fleeing suspect. A black nylon hooded jacket was found in the water with a black skull cap or "do-rag" inside of it.
>
> Questioned on cross-examination, Haskell denied that he sold marijuana. He admitted using marijuana and had a card issued by a physician for marijuana use. Haskell had been the victim of a strong-armed robbery on May 5, 2006, and when the perpetrator of that crime was apprehended while fleeing from police, he was carrying a backpack with individually packaged pieces of marijuana, hashish and 20 pieces of mail addressed to Haskell. On July 1, 2004, Haskell was stopped while riding as a passenger in his own car with a friend driving. Police discovered 19.3 grams of hashish and a pistol.
>
> In 1994, appellant was convicted of bank robbery. On October 27, 1993, he and two other men wearing ski masks and dark clothing had entered the First Interstate Bank in Mill Valley at about 4:45 p.m. One stood guard at the door while the other two pointed their guns at the tellers, saying, "Give me your hundreds, bitch, or I am going to kill you." The men left after the tellers gave them what money they had. A search of appellant's residence later that day revealed a blue jacket with a hood and a black Raiders wool cap with two holes cut for the eyes.

Answer, Ex. 2 at 2-5 (brackets in original, footnote omitted).

**B.   CASE HISTORY**

On March 16, 2007, in Marin County Superior Court Case No. 152496, Petitioner was charged by complaint with first degree burglary, in violation of California Penal Code § 459, and conspiracy to commit first degree burglary, in violation of California Penal Code § 182. Answer, Ex. 1, part 2, Clerk's Transcript ("CT") 59-63.

Trial commenced on July 5, 2007. 2CT 91-92. Over a defense objection, the trial court allowed the prosecution to present evidence that Petitioner had participated in an

1  armed bank robbery in 1993. Answer, Ex. 7, part 2, Reporter's Transcript ("RT") 18. The
2  trial court concluded that the prior robbery, which involved the use of masks, a gun and
3  accomplices, was sufficiently similar to the charged burglary to be probative of
4  Petitioner's intent at the time of the charged offenses. 2RT 18. The trial court also
5  concluded that the probative value of the prior robbery significantly outweighed any
6  prejudice in this case. 2RT 18. The trial court then admitted evidence of the prior robbery
7  on the issue of intent under Evidence Code Section 1101(b), stating:

> After having carefully reviewed the offer of proof regarding the facts of this case, that is, that the alleged victim's house was broken into by an individual wearing a dark hooded—or wearing dark hooded clothing and a mask and other facial coverings, and that that involved the use of a gun, and a review of the offer of proof regarding the prior incident, which also apparently involved facial coverings and a gun in a bank robbery, the Court finds that there is sufficient similarities between the prior incident and the present incident to be relevant and probative to the issue of intent in this case, since it seems to me that the primary issue of this case is intent, or put another way, the defendant's participation in the incident, whether he was a bystander or actually shared the criminal intent with the other perpetrators, if there were any others. ¶ And so the Court finds that there is sufficient similarity between the two incidents as to render the prior incident probative under the issue of intent. ¶ Regarding remoteness, the Court finds that the prior incident is not so remote as to render the probative value meaningless or to prejudice the defendant. The Court has weighed the potential prejudice against the defendant against the probative value and finds that the probative value does significantly outweigh any prejudice in this case, and with a limiting instruction, the Court will admit that prior evidence on the issue of intent under Evidence Code section 1101(b).

2RT 18.

On July 13, 2007, a Marin County jury convicted Petitioner of first degree burglary and conspiracy to commit first degree burglary. The trial court found true an allegation that he had been previously convicted of a serious felony within the meaning of the five-year serious felony enhancement and California's Three Strikes Law pursuant to California Penal Code §§ 1170.12(a)-(d), 667(b)-(i). 1CT 173-174. After revoking his probation in Marin County Superior Court Case No. SC144613 (a prior conviction for selling cocaine base in violation of Health and Safety Code § 11352 (a)), the trial court imposed an

4

1  aggregate prison sentence of fourteen years and four months: the middle term of four years
2  for the burglary, doubled to eight years under the Three Strikes Law, a five-year serious
3  felony enhancement, plus sixteen months (one-third the middle term of four years) for the
4  probation violation in the drug charge in the earlier case.  1CT 250, 259-260; 2CT 42.  The
5  trial court stayed the sentence on the conspiracy count.

6  Thereafter, Petitioner appealed his conviction, raising the following claims: (1) the
7  trial court abused its discretion in admitting evidence of the prior robbery; (2) the evidence
8  was insufficient to prove the entry element of burglary; (3) the evidence of conspiracy was
9  insufficient because there was no substantial evidence appellant agreed ahead of time to
10 commit the burglary; (4) the restitution fine originally imposed when Petitioner was placed
11 on probation in the drug case was improperly increased by the trial court when he was
12 sentenced to prison; (5) he was entitled to an additional day of custody credit; and (6) other
13 corrections/modifications must be made to the abstract of judgment.  Answer, Ex. 2 at 2.

14 On January 16, 2009, the California Court of Appeal affirmed the conviction, but
15 modified the restitution fine imposed, awarded Petitioner an additional day of actual
16 custody presentence credit, and made further corrections/modifications to the abstract of
17 judgment.  Id. at 12.

18 On February 23, 2009, Petitioner filed a state habeas petition in the California
19 Supreme Court.  Answer, Ex. 3.  On July 22, 2009, the state supreme court denied the
20 petition citing People v. Waltreus, 62 Cal. 2d 218 (1965) and Ex parte Lindley, 29 Cal. 2d
21 709 (1947).  Answer, Ex. 4.

22 On April 7, 2009, the trial court amended the abstract of judgment due to an error,
23 and Petitioner then appealed from the amendment.  On October 29, 2009, the California
24 Court of Appeal affirmed the judgment.  Answer, Ex. 5.

25 On January 19, 2010, the California Supreme Court denied review.  Answer, Ex. 6.
26 Petitioner thereafter filed the instant petition for writ of habeas corpus, alleging
27 three claims:  (1) the trial court erred when it admitted evidence of his involvement in a
28 prior robbery under California Evidence Code § 1101(b); (2) the prior robbery should have

5

been excluded under Evidence Code § 352 on the ground that the evidence was more prejudicial than probative; and (3) there was insufficient evidence to sustain his conviction. Dkt. 1.  On May 24, 2011, this Court issued an order to show cause.  Dkt. 5.  Respondent filed an answer.  Dkt. 8.  Petitioner did not file a traverse.

## II.  LEGAL STANDARD

The instant Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless:  (1) the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).

The first prong of § 2254 applies both to questions of law and to mixed questions of law and fact.  See Williams (Terry) v. Taylor, 529 U.S. 362, 407-409 (2000).  A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).  "When there is no clearly established federal law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue."  Holley v. Yarborough, 568 F.3d 1091, 1098 (9th Cir. 2009) (citing Carey v. Musladin, 549 U.S. 70, 76-77 (2006)).

Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

6

1  federal law erroneously or incorrectly." Williams (Terry), 529 U.S. at 411.  Rather, the

2  petitioner must show that the application of Supreme Court law was "objectively

3  unreasonable."  Id. at 409; Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

4      The second prong of § 2254 applies to decisions based on factual determinations.

5  See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Under 28 U.S.C. § 2254(d)(2), a

6  state court decision "based on a factual determination will not be overturned on factual

7  grounds unless objectively unreasonable in light of the evidence presented in the state-

8  court proceeding."  Miller-El, 537 U.S. at 340; see also Torres v. Prunty, 223 F.3d 1103,

9  1107 (9th Cir. 2000).

10      In determining whether a state court's decision is contrary to, or involves an

11  unreasonable application of, clearly established federal law, courts in this Circuit look to

12  the decision of the highest state court to address the merits of the petitioner's claim in a

13  reasoned decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991); LaJoie v.

14  Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Moreover, "a determination of a factual

15  issue made by a State court shall be presumed to be correct," and the petitioner "shall have

16  the burden of rebutting the presumption of correctness by clear and convincing evidence."

17  28 U.S.C. § 2254(e)(1).

18      On federal habeas review, AEDPA "imposes a highly deferential standard for

19  evaluating state-court rulings" and "demands that state-court decisions be given the benefit

20  of the doubt."  Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks

21  omitted).  In applying the above standards on habeas review, this Court reviews the "last

22  reasoned decision" by the state court.  See Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th

23  Cir. 2004).  The last reasoned decision in this case is the California Court of Appeal's

24  unpublished disposition issued on January 16, 2009.

25  **III.   CLAIMS**

26      A.   **ADMISSION OF THE PRIOR ROBBERY**

27      In his first two claims, Petitioner alleges that the trial court erred in allowing

28  evidence of the prior robbery under California Evidence Code § 1101(b) and that such

1    evidence should otherwise have been excluded under Evidence Code § 352.[2]  Petitioner

2    contends that the admission of the prior robbery evidence was prejudicial because it

3    portrayed him "as a callous, gun wielding thug."  Dkt. 1 at 7.

4         "Simple errors of state law do not warrant federal habeas relief."  Holley, 568 F.3d

5    at 1101.  "[F]ailure to comply with the state's rules of evidence is neither a necessary nor a

6    sufficient basis for granting habeas relief."  Jammal v. Van de Kamp, 926 F.2d 918, 920

7    (9th Cir. 1991).  "Under AEDPA, even clearly erroneous admissions of evidence that

8    render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief

9    if not forbidden by 'clearly established federal law,' as laid out by the Supreme Court."

10   Holley, 568 F.3d at 1101.  Where the Supreme Court has not adequately addressed a claim,

11   a court cannot rely on precedent from a lower court to find a state court ruling

12   unreasonable.  Carey, 549 U.S. at 77.

13        Petitioner's first two claims lack merit.  First, assuming arguendo that evidence of

14   the prior robbery was improperly admitted as character or propensity evidence bearing no

15   relevance to any material issue, AEDPA precludes federal habeas relief because the United

16   States Supreme Court has expressly left open the question of whether the admission of

17   such evidence violates due process.  See Estelle v. McGuire, 502 U.S. at 62, 75 n.5 (1991)

18   ("[W]e express no opinion on whether a state law would violate the Due Process Clause if

19   it permitted the use of 'prior crimes' evidence to show propensity to commit a charged

20   crime."); see also Mejia v. Garcia, 534 F.3d 1036, 1047 (9th Cir. 2008) ("[T]he United

21   States Supreme Court has never established the principle that introduction of evidence of

22   uncharged offenses necessarily must offend due process."); Larson v. Palmateer, 515 F.3d

23   1057, 1066 (9th Cir. 2008) ("The Supreme Court has expressly reserved the question of

---

[2] California Evidence Code § 1101(b) permits admission of evidence, including uncharged misconduct, when it is relevant to establish some fact other than the person's character, such as motive or intent.  Under § 352, a trial court is to exclude evidence where the probative value of the evidence is substantially outweighed by the potential for prejudice.

1    whether using evidence of the defendant's past crimes to show that he has a propensity for
2    criminal activity could ever violate due process") (citing Estelle, 502 U.S. at 75 n.2).
3    Because the Supreme Court has elected to leave this an open issue, a trial court's decision
4    to admit propensity or character evidence does not violate clearly established federal law
5    as determined by the Supreme Court.  See id.

6    Second, Petitioner has not shown that the state appellate court's decision was
7    objectively unreasonable.  The state appellate court determined that the prior robbery
8    evidence was admissible under § 1101(b), and not rendered inadmissible under § 352.
9    Specifically, the state appellate court found that there were sufficient similarities between
10   the prior robbery and charged offenses from which "the jury could reasonably infer that
11   when he and a companion broke down the victim's door while armed with a gun and
12   wearing clothing that concealed their identity, appellant acted with the same intent to steal
13   that he had harbored during the prior bank robbery." Ex. 2 at 6.  At the same time, the
14   court found that "the probative value of the prior robbery was not particularly strong,"
15   since the criminal intent in kicking in the door was "relatively clear," and that the "primary
16   issue" to be decided at trial was whether Petitioner was the perpetrator.  Id.  A state court's
17   determination of state law is binding on this Court.  See Hicks v. Feiock, 485 U.S. 624,
18   629 (1988).

19   Ultimately, however, the state appellate court concluded that even if the evidence
20   should have been excluded under Evidence Code § 352, such error was harmless in light of
21   the "very strong" evidence of Petitioner's guilt.  Id. at 7.  In finding harmless error, the
22   state appellate court implicitly found no due process violation.  See Bains v. Cambra, 204
23   F.3d 964, 971 n.2 (9th Cir. 2000) ("[the harmless error] standard under California state law
24   is the equivalent of the Brecht[3] standard under federal law, to wit, whether the errors had a
25   "'substantial and injurious effect or influence in determining the jury's verdict'") (citation
26   omitted).  Moreover, any prejudicial effect flowing from the prior robbery evidence was
27
28   [3] Brecht v. Abrahamson, 507 U.S. 619 (1993).

9

1  ameliorated by the limiting instructions read to the jury that they should consider such
2  evidence for the *limited purpose of showing intent* and specifically not to regard the
3  evidence to show propensity. 7RT 286-287. The Court presumes that the jury followed its
4  instructions and used the evidence appropriately. Richardson v. Marsh, 481 U.S. 200, 206
5  (1987).

Accordingly, the Court finds that the state appellate court's rejection of Petitioner's claims based on the allegedly erroneous admission of the prior robbery was neither contrary to nor or involved an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d)(1). Therefore, the Court DENIES relief on Claim One and Claim Two.

**B.  SUFFICIENCY OF THE EVIDENCE AS TO BURGLARY CONVICTION**

Evidence is constitutionally sufficient to support a conviction when, upon "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The reviewing court must presume that the trier of fact resolved any conflicts in the evidence in favor of the prosecution, and must defer to that resolution. Id. at 326. "A jury's credibility determinations are therefore entitled to near-total deference under Jackson." Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).

Under AEDPA, a federal habeas court applies Jackson "with an additional layer of deference." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). First, a reviewing court defers to the factfinder's resolution of all conflicting evidence, overturning the jury's verdict "only if no rational trier of fact could have agreed with the jury." Coleman v. Johnson, — U.S. —, 132 S. Ct. 2060, 2062 (2012) (per curiam). Second, a habeas court must sustain a state court decision rejecting a sufficiency-of-the-evidence challenge unless the decision reflects an unreasonable application of the Jackson standard. Juan H., 408 F.3d at 1274-75. In other words, to grant habeas relief, a federal court must conclude that "the state court's determination that a rational jury could have found that there was

10

sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable doubt, was objectively unreasonable." Boyer v. Belleque, 659 F.3d 957, 964-65 (9th Cir. 2011).

Sufficiency of the evidence claims, on federal habeas review, is performed with reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16. In the present case, California's burglary statute, Penal Code § 459, provides that a person commits burglary when he or she "enters any house, room, apartment . . . or other building . . . with intent to commit grand or petit larceny or any felony. . . ." Cal. Penal Code § 459. Petitioner argued that there was insufficient evidence to show that he "entered" the houseboat. Applying Jackson, the state appellate court analyzed the entry element as defined by state law, and concluded that sufficient evidence supported the burglary conviction. The court explained as follows:

> In People v. Valencia (2002) 28 Cal. 4th 1, 12, 120 Cal. Rptr. 2d 131, 46 P. 3d 920 (Valencia) [overruled in part on other grounds in People v. Yarbrough, 54 Cal. 4th 889, 894 (2012)], our Supreme Court affirmed that any kind of entry past the exterior of the premises, "complete or partial," will suffice under the burglary statutes. There, the court held that penetration of the area behind a window screen is enough, even when the window itself is closed and is not penetrated. (Id. at pp. 12-13, 120 Cal. Rptr. 2d 131, 46 P. 3d 920.) "Entry that is just barely inside the premises, even if the area penetrated is small, is sufficient." (Id. at p. 15, 120 Cal. Rptr. 2d 131, 46 P. 3d 920.)
>
> In this case, the victim testified that the intruders kicked in the front door to his houseboat and that when he examined it later, he saw it had been kicked off the hinges with the area around the doorknob splintered open. Deputy Yazzolino examined the door later that night and found the hinges and deadbolt broken. Another investigating officer, Deputy Blasi, confirmed that the lock on the door was no longer functional when he examined it and that it appeared a forced entry had been made. Blasi had received emergency response training that included techniques for breaching or entering a dwelling and had made over 20 forced entries through doorways, commonly using his feet. He had never been able to breach a doorway without breaking the plane of the doorway because due to the body weight and momentum behind a kick, "once the resistance gives way from the door, you unintentionally fall forward."
>
> From the foregoing evidence, a rational jury could

11

> reasonably determine that the intruder who kicked in the victim's door crossed the threshold with his foot. Moreover, one Court of Appeal recently held that kicking in the door of a home is itself sufficient to constitute a burglary, because the door itself becomes an instrument used to penetrate the building. (People v. Calderon (2007) 158 Cal. App. 4th 137, 144-145, 69 Cal. Rptr. 3d 641.) The evidence was sufficient to support the entry element of burglary. [FN 4]
>
> [FN 4:] The jurors were instructed on attempted burglary as an included offense, and could have returned a verdict on this lesser charged is they had harbored a reasonable doubt that appellant or his cohort entered the houseboat.

Answer, Ex. 2 at 8-9 (brackets added, footnote in original).

The record supports the state appellate court's determination that the evidence was sufficient to support the entry element of burglary. Haskell testified that the door to his houseboat was kicked in. 3RT 60. Officer Yazzolino found the hinges and deadbolt to the door broken. 4RT 95-96. Officer Blasi testified that the doorknob mechanism had been broken and was no longer functional, indicating that "a forced entry had been made." 4RT 105. Officer Blasi opined that it would not be possible to kick the door down without crossing the threshold of the door. 4RT 105-106. He testified to having conducted several forced entries through doorways, and concluded that, in this situation, one had to break the plane of the doorway because the body weight and momentum from kicking the door would cause that person to move forward. 4RT 106.

Based on the foregoing evidence, the state appellate court found that a jury could reasonably infer that Petitioner had "entered" the houseboat when he broke through the front door. Specifically, the state appellate court recognized that the entry element has been defined by the California Supreme Court in Valencia as an entry that is "just barely inside the premises" for it to be "sufficient" to for purposes of California's burglary statute. Answer, Ex. 2 at 8 (citing Valencia, 28 Cal. 4th at 14-15). Thus, the state appellate court determined that a rational jury could have found that the intruder who *kicked in* Haskell's door crossed the threshold with his foot, and thus supporting the entry element of burglary. Answer, Ex. 2 at 9. The Court concurs with that finding, which is entitled to deference. See Jackson, 443 U.S. at 324; see also Mendez v. Small, 298 F.3d

1154, 1158 (9th Cir. 2002) ("A state court has the last word on the interpretation of state law."); Melugin v. Hames, 38 F.3d 1478, 1487 (9th Cir. 1994) (federal habeas court is bound by state court's interpretation of state law). Therefore, the Court finds objectively reasonable the state appellate court's application of Jackson and its determination that a rational jury could have found sufficient evidence of the entry element of the burglary conviction. See Juan H., 408 F.3d at 1274-75.

Accordingly, Petitioner is not entitled to habeas relief on his claim of insufficiency of the evidence as to the burglary conviction, and Claim Three is DENIED.

## IV. CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case. For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

## V. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. The Petition for Writ of Habeas Corpus is DENIED as to all claims, and a certificate of appealability will not issue. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2. The Clerk of the Court shall enter judgment, terminate any pending motions, and close the file.

IT IS SO ORDERED.

Dated: September 26, 2014

SAUNDRA BROWN ARMSTRONG
United States District Judge

13